656 S.E.2d 129

**Nancy B. PARKER, Trustee of the Hartford E. Bealer Foundation, Plaintiff Below, Appellee**

v.

**The ESTATE OF Hartford E. BEALER, by U.S. Trust Company of Florida S.B., as Executor of the Estate of Hartford Bealer and U.S. Trust Company of Florida S.B., As Trustee of the Hartford E. Bealer Amended and Restated Declaration of Trust, Sally B. Kirchiro, Trustee, and Kathleen K. Stone, Defendants Below, Appellants.**

**No. 33339.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 10, 2007.

Decided Nov. 21, 2007.

---

Richard G. Gay, Esq., Nathan P. Cochran, Esq., R. Greg Garretson, Esq., Law Office of Richard Gay, Berkeley Springs, WV, V. Alan Riley, Romney, WV, Attorneys for Appellants.

Tammy Mitchell McWilliams, Esq., Joanna L–S. Robinson, Esq., Martinsburg, WV, Attorneys for Appellee.

PER CURIAM.

The appellants, United States Trust Company of Florida, S.B., as personal representative of the Estate of Hartford E. Bealer, deceased, and as Trustee of the Hartford E. Bealer Revocable Trust, as amended, and Kathleen K. Stone, the granddaughter of Mr.

Bealer, appeal from the June 2, 2006, order of the Circuit Court of Hampshire County, which granted the appellee, Nancy Parker's, motion for summary judgment in an action over Mr. Bealer's 277.42 acre Hampshire County farm (hereinafter, the "farm"). Ms. Parker, the daughter of Mr. Bealer, filed the underlying action as the Trustee of the Hartford E. Bealer Foundation (hereinafter, the "Foundation" or "trust"), wherein the farm was temporarily held. The issue on appeal is whether the Foundation was void *ab initio* due to a mistake in its formation, which, in turn, would invalidate the initial transfer of the farm by Mr. Bealer to the Foundation.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order granting summary judgment for the appellee is reversed, and this case is remanded to the circuit court with directions to enter an order granting summary judgment in favor of the appellants.

## I.

### FACTS

On January 9, 2003, at the age of ninety-three, Hartford E. Bealer died leaving an estate worth more than $22 million. Mr. Bealer, who founded Chevy Chase Bank, was survived by two adult daughters, Nancy Parker and Sally Kirchiro, as well as various grandchildren and great grandchildren. His extensive estate is in probate in Florida, and Ms. Parker, the appellee, has instituted litigation in Florida, Maryland, and West Virginia against several of her family members with regard to numerous aspects of Mr. Bealer's estate.

With regard to the Florida litigation, on September 28, 2007, the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, denied Ms. Parker's claim of tortious interference with an expectancy she filed against her daughter and other family members. The Florida court specifically found that Mr. Bealer acted of his own free will and free agency and made decisions and choices as he saw fit with regard to the distribution of his estate. Moreover, the circuit court declared that Mr. Bealer's decisions surrounding his estate were not the product of undue influence, that Mr. Bealer was clearly mentally competent, and that his declarations were all valid and enforceable.[1]

The subject of appeal in West Virginia is a 277.42 acre river-front Hampshire County farm with a 2003 appraised value of more than $1.2 million. In 2000, Mr. Bealer, while living in Florida, attempted to create a tax-exempt charitable Foundation, into which he placed the title to his Hampshire County farm. Based upon information provided by his son-in-law, Jay Parker, who is a tax attorney, Mr. Bealer believed that he would be able to set up the Foundation without having to meet an Internal Revenue Service rule, which requires charitable foundations to distribute annually a minimum of five percent of the market value of the foundation's assets to one or more charitable organizations.[2] Soon thereafter, Mr. Bealer's Florida attorneys informed him that Mr. Parker was mistaken with regard to the law and that in order to meet the five-percent obligation he would have to sell part of the farm each year or contribute additional money each year to the Foundation, which was not Mr. Bealer's intent.

After learning that Mr. Parker was incorrect with regard to his interpretation of the applicable tax laws, Mr. Bealer and his attorneys attempted to contact Mr. Parker, who did not return their phone calls or respond to their written correspondence. On November 30, 2000, Mr. Bealer removed Mr. Parker as a co-trustee of the Foundation, and on December 11, 2000, he re-deeded the Hampshire County farm to himself as he feared that Mr. Parker would attempt to sell it. Mr. Bealer thereafter changed his estate documents and left his farm to his granddaughter, Kathleen Stone, who had expressed her interest in preserving the farm.

---

1. Ms. Parker is currently appealing the circuit court's September 28, 2007, order to Florida's Fourth District Court of Appeal.

2. *See* Internal Revenue Service Code § 501(c)(3).

Upon Mr. Bealer's death, his daughters, Ms. Parker and Ms. Kirchiro, were named the co-trustees of the Foundation. When it was learned that Ms. Parker planned to sue Ms. Kirchiro's daughter, Kathleen Stone, with regard to the Hampshire County farm, Ms. Kirchiro was removed as a trustee of the Foundation, leaving Ms. Parker to act as sole trustee. Ms. Parker, as the appellee, brought the current litigation arguing that the farm was still a part of the Foundation and that her father did not have a legal right to deed it back to himself and subsequently leave it to Ms. Stone.

On June 2, 2006, the Circuit Court of Hampshire County denied the appellants' motion for summary judgment and granted the appellee's motion for summary judgment. The appellants subsequently appealed the circuit court's order.

## II.

## STANDARD OF REVIEW

■ The appellants contend that the circuit court erred in granting summary judgment to the appellee. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not

desirable to clarify the application of the law."

■ Moreover, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Additionally, "[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus Point 3, *Williams*. With these standards in mind, we now proceed to consider the issues presented in this case.

## III.

## DISCUSSION

■ The issue in this appeal is whether the circuit court's granting of Ms. Parker's motion for summary judgment was appropriate, which resulted in Mr. Bealer's 277.42 acre farm remaining in the Foundation and not in Mr. Bealer's estate. The appellants, the estate of Mr. Bealer and Kathleen K. Stone, Mr. Bealer's granddaughter, argue that summary judgment was not proper and maintain that there was no effective Foundation in this case because there was a mistake in its creation making the Foundation void under Florida law.[3]

---

**3.** We have jurisdiction of this case because the trust property in dispute is located in Hampshire County, West Virginia. In Syllabus Point 2 of *Ray v. Hey*, 183 W.Va. 521, 396 S.E.2d 702 (1990), we held:

Because only the circuit court of the county where the land is located has jurisdiction to consider a case directly affecting the land or its title, and venue is expressly authorized in that

county by W.Va.Code, 56–1–l(a)(3) [1986], any action that directly affects land or its title must be brought in the circuit court where the land is located. To the extent that *Rader v. Adamson*, 37 W.Va. 582, 16 S.E. 808 (1893), indicates that venue for an action directly affecting land or its title may be based on the residence of the defendant rather than on the location of the land, it is overruled.

The appellants point out that Mr. Bealer relied on the advice of Jay Parker, his son-in-law, to the effect that the Internal Revenue Service five percent minimum yearly distribution rule did not apply to this Foundation at the time he decided to form the Foundation and transfer his farm into it. The appellants explain that upon learning that Mr. Parker, who was an experienced real estate and tax attorney, was wrong and had given him erroneous advice regarding the formation of the Foundation, Mr. Bealer immediately removed Mr. Parker as a co-trustee of the Foundation and thereupon re-deeded the 277.42 acre farm to himself. The appellants argue that based upon Mr. Parker's bad and incorrect advice, Mr. Bealer, relying on that bad advice, made a mistake in forming the Foundation because he "misunderstood the meaning or implication" of whether the five percent minimum distribution rule applied to the Foundation. Thus, the appellants maintain that the farm transfer to the Foundation was void *ab initio*.

The appellee, Ms. Parker, acting as trustee of the Hartford E. Bealer Foundation, responds that there was no mistake in the formation of the Foundation and that Mr. Bealer knew he was signing an *inter vivos* trust instrument. The appellee maintains that Mr. Bealer simply changed his mind and that the trust was valid at the time of his death. Thus, according to the appellee, Mr. Bealer did not have the authority to transfer the property back to himself and that it is irrelevant whether or not he later decided that he wished to keep the farm in the family.

Having reviewed the entire voluminous record before us, as well as doing an exhaustive search of Florida law, we believe that the circuit court erred in granting summary judgment for the appellee and in its determination that the trust was not void due to a mistake in its formation.

In this case, it is necessary to review the undisputed facts in more detail. Mr. Bealer was a successful Maryland businessman who moved to Florida in 2000 and became a Florida resident. In April of 2000, Mr. Bealer met with his attorneys, Ronald Fick and Jonna Brown, in Florida to discuss his estate wherein Mr. Bealer established a variety of estate planning documents. Among his many assets, Mr. Bealer was concerned with the preservation of his 277.42 acre farm in Hampshire County, West Virginia, and it is clear from the record that Mr. Bealer's unequivocal testamentary intent was to figure out a way to preserve the farm and make it available for generations of his family members. He clearly did not want the farm or any part of it sold. That is not in dispute.

The question, however, is whether his creation of a Foundation wherein Mr. Bealer primarily relied on specific advice from his son-in-law, an attorney named Jay Parker who is married to the appellee, Ms. Parker, caused the trust to be void. To answer this fundamental question we must examine and apply Florida law. Under Florida law, a trust is void if the execution is procured by mistake. Florida Statute § 737.206 provides that: "A trust is void if the execution is procured by fraud, duress, mistake, or undue influence. Any part of the trust is void if so procured, but the remainder of the trust not so procured is valid if it is not invalid for other reasons." [4]

While mistake is not defined by the statute, Florida law directs us that: "Where a statu[t]e does not specifically define words of common usage, a dictionary may be consult-

---

However, we must apply Florida law to determine whether there was a mistake in the formation of the trust agreement designed to create the Foundation as its governing documents, which were drafted in Florida, specifically provide that: "The law of Florida shall govern the validity and interpretation of the provisions of this trust agreement."

4. On July 1, 2007, Fla. Stat. § 737.206 was repealed and replaced with § 736.0406. The main change was replacing the word "execution" with "creation" in the first sentence. While the revi-

sion would not change the result of this case if we applied that statute, it is included below with the revisions in italics. Thus, Fla. Stat. § 736.0406 provides:

A trust is void if the *creation of the trust* is procured by fraud, duress, mistake, or undue influence. Any part of the trust is void if so procured *by such means*, but the remainder of the trust not so procured *by such means* is valid if *the remainder* is not invalid for other reasons.

ed to ascertain the plain and ordinary meaning the Legislature intended to ascribe to the term." *State v. Darynani*, 774 So.2d 855, 857 (Fla. 4th DCA 2000). *See also, Barr v. State*, 731 So.2d 126, 129–130 (Fla. 4th DCA 1999) ("We disagree and hold the term may be readily understood by reference to commonly accepted dictionary definitions.") *overruled on other grounds by State v. Bradford*, 787 So.2d 811 (Fla.2001); *Powell v. State*, 508 So.2d 1307, 1310 (Fla. 1st DCA 1987) (holding that dictionary definitions may be used as sources where a statute does not define a term in question). With this in mind, we turn to *Webster's Ninth New Collegiate Dictionary*, 761 (Frederick C. Mish ed.; Meriam Webster 1991), wherein mistake is defined as "misunderstanding the meaning or implication of something." Moreover, according to *Black's Law Dictionary*, 1022–1023 (Bryan A. Garner ed.; Thomson West 2007), a mistake is defined as: "An error, misconception, or misunderstanding; an erroneous belief."

As previously stated, the facts below require the overwhelming conclusion that Mr. Bealer did not want his farm sold and more specifically that he wanted the entire parcel to remain intact. One of his Florida attorneys, Mr. Fick, testified that:

Mr. Bealer said he did not want his farm sold. He wanted it preserved. He wanted it conserved. He wanted it in the form it's in now or was then. He wanted it to be available for children to come and enjoy the farm, inner-city children, to see what farm life was like. He wanted all his exotic animals to stay there. He didn't want it touched.

In deciding how to accomplish the preservation of his farm, Mr. Bealer relied on Mr. Parker. While Mr. Bealer's Florida attorneys expressed concerns that the Foundation may not have been the best vehicle to accomplish his ultimate goals, Mr. Bealer told them that his son-in-law, who was a tax lawyer, assured him expressly that he "had a way around the five percent distribution rule." Mr. Bealer was referring to the federal tax requirement that his Foundation would be required to distribute annually a minimum of five percent of the market value of the Foundation's assets to one or more charitable organizations.

After relaying his concerns with regard to the formation of the Foundation, Mr. Fick testified that Mr. Bealer told him:

his son-in-law, Jay Parker, is a tax lawyer, and that Jay Parker had already worked this out with the Cincinnati office of the Internal Revenue Service and with the State of West Virginia, and that this Foundation would not be subject to the same five percent rule that normal charitable Foundations are.

Likewise, Jonna Brown, his other Florida attorney, testified that Mr. Bealer stated: "I understand what you're saying, but Jay Parker has been working with the Internal Revenue Service and the State of West Virginia. This is his baby, and I'm going to let him run with it." Mr. Fick similarly testified that Mr. Bealer "said that Jay had already worked this out. He thanked us for the research, but he said that this is Jay's baby, and that was actual words he used, 'This is Jay's baby. Let's let him run with it.'" Mr. Fick also testified that Mr. Parker telephoned him two or three times prior to the execution of the Foundation documents and that Mr. Fick inquired specifically about the five percent minimum distribution rule. During one of those conversations, Mr Fick said that Mr. Parker told him "he was taking care of that, not to worry" and that "he had things worked out with the Internal Revenue Service and the state of West Virginia."

Thereafter, on April 27, 2000, acting on the advice of Mr. Parker, Mr. Bealer established the "Hartford E. Bealer Charitable Foundation." Mr. Bealer named himself and Mr. Parker as co-trustees of the Foundation. Mr. Bealer, however, specifically retained the power to terminate the Foundation, remove any Trustee, and name additional or successor Trustees. Days later, in May of 2000, Mr. Bealer transferred the 277.42 acre farm to the Foundation without consideration. No other significant assets were transferred into the Foundation by Mr. Bealer at that time or at any other time prior to his death.

After the transfer of the farm to the Foundation was completed, which was the sole purpose of creating the Foundation in the

first place, Mr. Bealer and his Florida attorneys attempted to contact Mr. Parker with regard to the five percent minimum distribution rule requirements to make sure that he had taken care of that critical aspect of the Foundation. Unfortunately, however, Mr. Parker failed to communicate in any manner with Mr. Bealer or his attorneys. Mr. Fick testified that Mr. Parker "went dark" and that Mr. Bealer became fearful that he would sell his farm. Mr. Fick testified:

> Throughout November he wanted to know—he had not heard, and he had tried to reach Mr. Parker, as well, and couldn't reach him. Our firm was not able to reach him.

> He was concerned that Mr. Parker was going to sell some of—some portion of his farm in West Virginia, and he was concerned about it. And when Jay Parker went dark, we couldn't reach him and he couldn't reach him, that is, Mr. Bealer couldn't reach him and he couldn't reach him, that is, Mr. Bealer couldn't reach him, he asked, 'What can I do?'

> And we told him, 'Well, you can remove Jay Parker as a Trustee.' And I believe that was in early November. It may have been at that November 8th meeting.

Moreover, Ms. Brown testified that Mr. Bealer came to fear that Mr. Parker might sell the Farm. In reference to an October 18, 2000, letter to Mr. Parker from Ms. Brown's law firm, she stated: "I remember in November of 2000, when we had not received a response from Mr. Parker to this letter, Mr. Bealer was very concerned about the sale of the real—of the real estate in the Foundation." She further explained:

> Yes, he was concerned and we—was—well, yeah, he was concerned that Jay was going to sell this property without Mr. Bealer knowing anything about the sale and the fact that the property was being sold. He didn't want the property being sold. He was very concerned about it.

Ms. Brown also testified that Mr. Bealer "heard rumors that Mr. Parker was negotiating a sale of the property."

Subsequently, after learning that Mr. Parker was completely wrong and gave incorrect advice with regard to the five percent minimum distribution rule, and the truth was that it could not be avoided, Mr. Bealer removed Mr. Parker as co-trustee of the Foundation, leaving himself as the sole trustee of the Foundation. On December 11, 2000, Mr. Bealer then transferred the farm back to himself, leaving no other significant assets in the Foundation. Mr. Bealer did not claim any tax advantages for the initial transfer of the farm and at all times before, during, and after such transfer, he paid all taxes and upkeep for the farm from his personal funds and not from the Foundation.

Mr. Bealer then revised his estate plan to provide that the Farm would be distributed upon his death to his granddaughter, Kathleen Stone, who gladly agreed to preserve the farm. Ms. Stone testified that:

> He was thrilled that I loved the farm. He was concerned that it was such a money drain and such an effort drain. For anyone in the family to be able to preserve this would be a dream for him; that I was interested in possibly filling that bill delighted him and that I loved every grain of soil in that Farm pleased him. He struggled over whether he thought that—that that would be good. He was thrilled that I—he saw me loving the farm.

Thus, in his Fourth Amended and Restated Declaration of Trust, Mr. Bealer provided that Ms. Stone would receive the farm and that her other cash gifts were thereby reduced under his estate. The relevant provision of his Trust states:

> 3.7 *Distribution of Real Property to Kathleen H. Stone.* The Trustee shall distribute all right, title and interest owned by the Trustee (or distributable to the Trustee by reason of my death) in the real property known as the Millrace Farm, located in Hampshire County, West Virginia, including the two residences located thereon and all animals located thereon, including, but not limited to, cattle, buffalo, llamas, donkeys, horses and goats, to my granddaughter, KATHLEEN H. STONE, if she survives me. If my said granddaughter does not survive me, then such real property, including such residences and animals, shall be distributed per

stirpes to the descendants of my grand-daughter, KATHLEEN H. STONE, who survive me, or if none, then this distribution shall lapse; except that any portion otherwise distributable to a great grandchild of mine shall be further held in trust for the benefit of such great grandchild and administered as provided in Article V below. This distribution shall be free of any estate, inheritance or GST taxes assessed by reason of my death.

In consideration of all of the above and applying Florida Statutes, it is clear to us that Mr. Bealer's unqualified intent was to preserve the Hampshire County farm, and it is equally clear under Florida law that the Foundation was void from the very beginning due to a fundamental and threshold mistake in its creation. That mistake was reliance by Mr. Bealer on Mr. Parker's ironclad representations that he had researched the law, contacted the I.R.S., contacted the State of West Virginia, and had discovered a clear way to avoid the five percent distribution rule. This advice as we now know was bad advice and was simply incorrect inasmuch as Mr. Parker was wrong, and despite his assurances to the contrary, the distribution rule would in fact apply to this Foundation. It should be noted that this was not advice provided to Mr. Bealer from an inexperienced individual or some pettifogger with no familiarity with the law. Astonishingly, this was advice from his son-in-law who was a very competent lawyer, skilled in tax law, and a man with an impressive list of accomplishments.[5]

Understandably, Mr. Bealer trusted Mr. Parker's advice. His advice, however, was entirely contrary to Mr. Bealer's clear intent in preserving the West Virginia farm intact, and in opposition to such goals as intended by the Foundation and in opposition to the dissipation or sale of any part of the farm.

With regard to Florida law, Mr. Fick, who is a Board Certified, Wills, Trusts and Estate Lawyer in the State of Florida, testified that he believed the Foundation was always void. He stated that:

> under Florida law if a Trust, the execution of which is procured by a mistake—and in this case we had a mistake because Mr. Bealer was under the mistaken impression that by putting his farm into the Foundation, that was all he was going to have to put in, nothing else, and would never have to sell any of the farm, that the Trust was void. Under Florida law if the execution of a Trust is procured by a mistake, it's void.

Likewise, Ms. Brown testified that she believed the Foundation was never valid. She stated that she based her opinion "upon [her] knowledge of what Mr. Bealer's understanding was of the Foundation." She further explained that due to the five percent rule, "the Foundation document was so inconsistent with Mr. Bealer's purposes, that it was never valid." We are likewise persuaded that the Foundation was never valid.

Consequently, we believe that there was no effective Foundation created in this case because the fundamental mistake in creating the Foundation made it void under Florida law. Any other finding in any other manner by this Court would completely frustrate the perfectly plain and clear intention of Mr. Bealer. In fact, even Ms. Parker, the appellee, does not disagree that Mr. Bealer's intent was to preserve the farm. Instead, she argues that Mr. Bealer simply had no legal right to further transfer the property after he deeded it to the Foundation. Nonetheless, Mr. Bealer's mistake in his belief that the federal tax requirements were complied with and correctly interpreted by Mr. Parker was critical to his purpose of preserving the farm and to the execution and attempted

---

5. Some of Mr. Parker's relevant experiences include: attending the Unites States Military Academy at West Point from 1953 to 1957; attending the Hague Academy of International Law in 1959; attending the Comparative School of Law at Luxembourg, the Grand Duchy of Luxembourg in 1959; receiving his law degree from the University of Alabama in 1960; working as an attorney for the United States Treasury Department at the Internal Revenue Service (wherein according to Mr. Parker, he "worked with the staff of the [United States] House [of Representatives] Ways and Means Committee to try for legislation affecting the Tax Code of the United States."); working as a Chief of Staff to a United States Congressman; working as a partner in a real estate investment and development firm in Alexandria, Virginia; and practicing law for many years primarily in the areas of real estate and development.

creation of the trust. Had Mr. Bealer known and understood that Mr. Parker's advice was incorrect, it is clear that he would have found another manner to preserve his farm other than the Foundation he attempted to create. Thus, we are compelled to find the entire transaction in transferring the West Virginia property to the Foundation to be void *ab initio*, and further, we therefore find that the farm was never legally a part of the failed Foundation and thus remained, and now remains, a part of Mr. Bealer's estate.

After fully reviewing the evidence, we believe that the circuit court erred in granting summary judgment to the appellee. As a consequence, the order of the Circuit Court of Hampshire County is reversed, and this case is remanded for further proceedings consistent with this opinion.[6]

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Hampshire County entered on June 2, 2006, is reversed, and this case is remanded to the circuit court with directions to enter an order denying summary judgment to the appellee and granting summary judgment in favor of the appellants. The circuit court is also directed to ensure that some memorandum of these proceedings, by order or deed or combination thereof, be spread upon the appropriate property records of the Clerk of the County Commission of Hampshire County, West Virginia, reflecting the appropriate title to this property and the effect of this decision thereon.

Reversed and remanded with directions.

---

**6.** Our reversal is based on the determination that summary judgment in favor of the appellee was not appropriate and thus disposes of our need to address the other assignments of error. Therefore, this Opinion will not address the merits of the mooted assignments of error.