IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0195

_____

FILED

**June 11, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation;
and GREG CHANDLER'S FRAME & BODY, LLC,
a West Virginia limited liability corporation,
Defendants Below, Petitioners

v.

PATRICK MORRISEY, ATTORNEY GENERAL,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Charles E. King, Jr., Judge
Civil Action No. 11-C-2231

REVERSED AND REMANDED

_____

Submitted: March 25, 2014
Filed: June 11, 2014

Clarence E. Martin, III, Esq.
Martin & Seibert, LC
Martinsburg, West Virginia
Counsel for Petitioner, Liberty Mutual
Insurance Company

R. Michael Shaw, Esq.
Point Pleasant, West Virginia
Counsel for the Petitioner, Greg Chandler's
Frame & Body, LLC

Patrick Morrisey, Esq.
Attorney General
Douglas L. Davis, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v Peavey*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

3.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

4.      "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

5.      "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

i

6. "A statute that is ambiguous must be construed before it can be applied." Syllabus Point 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).

7. "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syllabus Point 1, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983).

8. "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syllabus Point 1, *Consumer Advocate Division v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989).

9. "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syllabus Point 2, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

10. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

11. "Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in

Pari materia to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly." Syllabus Point 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975).

12.     "Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect." Syllabus Point 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958).

Per Curiam:

The instant action is before the Court upon the appeal of Petitioners, Liberty Mutual Insurance Company ("Liberty Mutual") and Greg Chandler's Frame & Body, LLC ("Chandler's"), from a December 13, 2012, order of the Circuit Court of Kanawha County granting the Respondent, Patrick Morrisey, Attorney General of West Virginia's motion for summary judgment and motion to dismiss Petitioners' counterclaim for declaratory judgment. The circuit court also permanently enjoined Liberty Mutual from requiring the use of salvage/recycled OEM crash parts when negotiating repairs for motor vehicles in the year of the vehicle's manufacture or in the two succeeding years without written consent of the vehicle owner, and permanently enjoined Chandler's from preparing estimates for the repair of new vehicles using salvage/recycled OEM crash parts unless it provided disclosures and obtained written consent of the vehicle owner. In this appeal, Petitioners allege that the circuit court's interpretation of the West Virginia Automotive Crash Parts Act, W. Va. Code § 46A-6B-1, *et seq.* (1995), ("Crash Parts Act") was erroneous and that the circuit court erred in granting the State's motions without conducting further discovery. Conversely, the State asserts that the circuit court's interpretation of the Crash Parts Act was proper and that Petitioners' admission that it required the use of salvage/recycled OEM parts without written consent was fatal to its Rule 56(f) affidavit. Upon examination of the petition, the response, the submitted appendices, and the arguments of counsel, we conclude that, for reasons set forth more fully below, the circuit court's order should be reversed and that this matter be remanded for further proceedings consistent with this Opinion.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Liberty Mutual is an insurance company licensed to do business in West Virginia. Liberty Mutual maintains a list of preferred body shops that may be selected by their insureds to repair vehicles that are involved in accidents or otherwise damaged. It refers to these preferred body shops as Total Liberty Care ("TLC") Shops. Petitioner Chandler's operates an automobile body shop in West Virginia and is one of Liberty Mutual's TLC Shops.[1]

---

[1] It is necessary at the beginning to explain the terminology used in this appeal with respect to the types of automobile crash parts that are available for the repair of damaged vehicles. "Crash parts" means "exterior or interior sheet metal or fiberglass panels and parts that form the superstructure or body of a motor vehicle, including but not limited to, fenders, bumpers, quarter panels, door panels, hoods, grills, fire walls, permanent roofs, wheel wells and front and rear lamp display panels." W.Va. Code § 46A-6B-2(c) (1995).

"Genuine crash parts" means "parts manufactured by or for the original manufacturer of the motor vehicle to be repaired" that "are authorized to carry the name or trademark of the original manufacturer of the motor vehicle." W.Va. Code § 46A-6B-2(d) (1995). "Aftermarket crash part" means a part "manufactured by a person other than the original manufacturer of the motor vehicle to be repaired" and "for which the original manufacturer of the motor vehicle has not authorized the use of its name or trademark by the manufacturer of the crash parts." W.Va. Code § 46A-6B-2(a) (1995).

"Salvage crash parts" or "recycled genuine original equipment (OEM) parts" are used interchangeably and are not defined in our Code. The circuit court defined "salvage crash parts/recycled genuine original OEM parts" to mean "a part manufactured by the original manufacturer that is authorized to carry the name or trademark of the original manufacturer, but has been removed from a salvaged vehicle." Similarly, a January 17, 2012, Federal Trade Commission Alert submitted by the parties defines a recycled OEM part as "a part that was made for and installed in a new vehicle by the manufacturer or the original equipment manufacturer, and later removed from the vehicle and made available (continued . . .)

for resale or reuse." Although the parties use different terms to refer to these parts, and the circuit court chose to refer to them as "salvage" parts, for purposes of the instant appeal, we will refer to them as "salvage/recycled OEM" parts.

The West Virginia Legislature passed the Crash Parts Act, W. Va. Code § 46A-6B-1, *et seq.* to address the use of aftermarket crash parts in the repair of motor vehicles involved in accidents. West Virginia Code § 46A-6B-1, the Legislative declaration for the Crash Parts Act, provides

> The Legislature hereby finds and declares as a matter of public policy that the purposes of this article are to require disclosure to motor vehicle owners of information on certain replacement crash parts for repairs to their motor vehicles and to prevent both motor vehicle body shops and insurance companies from requiring the use of aftermarket crash parts for repair unless the motor vehicle owner consents in writing at the time of the repair.

W. Va. Code § 46A-6B-1 (1995).

West Virginia Code § 46A-6B-3 places certain limitations on the use of aftermarket crash parts when negotiating repairs of a motor vehicle. It provides,

> For all motor vehicles requiring repair by motor vehicle body shops in the year of their manufacture or in the two succeeding years thereafter, motor vehicle body shops must use genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts. No insurance company may require the use of aftermarket crash parts when negotiating repairs of the motor vehicle with any repairer for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts.

W. Va. Code § 46A-6B-3 (1995).

Liberty Mutual maintains a nationwide policy for its TLC Shops concerning the use of salvage/recycled OEM crash parts. Liberty Mutual asserts that it directed its TLC shops to repair vehicles utilizing salvage/recycled OEM crash parts where available and appropriate, which satisfied the following criteria: (a) manufactured by the original manufacturer; (b) from a vehicle of the same model year or newer; and (c) with the same number of miles or fewer than the vehicle to be repaired. However, Liberty Mutual's policy that it did not utilize aftermarket crash parts in the repair of vehicles three years old or newer did not change.[2]

On December 15, 2011, the Attorney General filed a complaint and petition for temporary and permanent injunction alleging that (1) Petitioner Liberty Mutual required the use of salvage/recycled OEM crash parts when negotiating the repairs for

---

[2] Liberty Mutual claims that it based its decision upon its understanding that the use of salvage/recycled OEM crash parts was sufficient to maintain the manufacturers' warranties for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance of the motor vehicle, pursuant to the provisions set forth in the Crash Parts Act, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and factory warranties issued by new car manufacturers. As a further service, Liberty Mutual provided a lifetime warranty to the owner of the motor vehicle for all repairs performed by its TLC Shops. In addition, Chandler's issued its own lifetime warranty for vehicles repaired by it. Liberty Mutual claims that Joe Holland, one of its former TLC shops, voiced an objection to using these parts and when they were unable to resolve the issue, Joe Holland was removed from Liberty Mutual's list of approved TLC shops. Joe Holland then contacted the Attorney General's office. Liberty Mutual believes that Joe Holland is disgruntled because its interest in selling new OEM parts has been impacted by Liberty Mutual's practice.

4

motor vehicles without the written consent of the motor vehicle owner in violation of the West Virginia Crash Parts Act (§ 46A-6B-3) and the West Virginia Consumer Credit and Protection Act (§ 46A-6-104); (2) Petitioner Chandler's failed to include a written statement notifying motor vehicle owners that salvage/recycled OEM crash parts were being used to repair their vehicles in violation of West Virginia Code §§ 46A-6B-4 and 46A-6-104; and (3) Petitioners' failure to disclose to consumers that salvage/recycled OEM crash parts were being used was an unfair or deceptive practice as defined by West Virginia Code § 46A-6-102(7)(M) in violation of West Virginia Code § 46A-6-104.[3]

Petitioners removed the action to the United States District Court for the Southern District of West Virginia, asserting that the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, preempted the West Virginia Automotive Crash Parts Act, W.Va. Code § 46A-6B-1, *et seq.*, because it "prohibit[ed] manufacturers from voiding or invalidating warranties based on the use of aftermarket or recycled OEM parts during repairs." The District Court, Judge Goodwin, issued a Memorandum Opinion and Order on March 27, 2012, remanding the case back to the circuit court, concluding, in part, that (1) the MMWA prohibits warrantors of consumer products from conditioning warranties on certain circumstances, (2) the West Virginia Crash Parts Act maintains

---

[3] West Virginia Code § 46A-6B-6 (1995) provides that "[a] violation of any provision of this article is an unfair or deceptive act or practice within the meaning of section one hundred two, article six of this chapter and is subject to the enforcement and penalty provisions contained in this chapter."

5

standards for motor vehicle shops and insurance companies for the repair of newer automobiles, and (3) therefore, the two laws govern different actors and different conduct.

Upon remand, the circuit court held a hearing on April 9, 2012, on the State's motion for temporary injunction, at which time the parties agreed that the matter could be decided on cross motions for summary judgment. Petitioners agreed that they would convert their previously-filed motion to dismiss to a summary judgment motion with the right to supplement said motion. The circuit court permitted the parties the opportunity to conduct discovery, but no scheduling order was entered. On April 25, 2012, the Petitioners each filed an answer to the Attorney General's complaint, including a counterclaim seeking a declaratory judgment concerning the issues at hand. Petitioners also served discovery requests upon the State.

Thereafter, the State filed its motion for summary judgment and attached as exhibits emails between Liberty Mutual and its TLC Shops, work orders from TLC Shops, manufacturer's position statements from Mazda, Honda, Volvo and Ford, published opinions from automobile industry guide Edmunds.com, and correspondence from the New York State Auto Collision Technicians Association and the Federal Trade Commission. The State then filed a motion to dismiss Petitioners' counterclaim. Petitioners filed their response to the State's motion for summary judgment and to its motion to dismiss, and included a Rule 56(f) affidavit by its counsel detailing alleged

6

discovery disputes with the State and asserting that further discovery "will reflect that contrary to the representations to [the circuit court], the use of recycled OEM crash parts does not serve to automatically void a manufacturer's new car warranty . . . ."

The circuit court held a hearing on September 24, 2012, on the State's motion for summary judgment and motion to dismiss Petitioners' counterclaim for declaratory judgment. In its December 18, 2012, order, the circuit court stated that it had previously decided this very same issue in a case styled, *W.Va. Automotive Dismantlers and Recycler's Association, the W.Va. Insurance Federation, Inc., and State Farm Mutual Automobile Insurance Company v. McGraw, et al.*, Civil Action No. 97-C-2797 (Aug. 1998). In that case, in an August 20, 1998, order, the circuit court ruled as follows:

> When automobile insurance companies negotiate the repair of automobiles, and when motor vehicle body shops repair automobiles using "genuine crash parts" sufficient to maintain the automobile manufacturer's new car warranty for that part, they must first obtain the written consent of the owner of the automobile to be repaired to use "aftermarket crash parts," as defined by the [West Virginia Automotive Crash Parts Act], or "salvage crash parts," as the term has been used in this opinion.

With its prior decision as the backdrop for its classification of "salvage crash parts" and the requirement that their use be disclosed the same as with "aftermarket crash parts," the circuit court went on to find that Petitioner Liberty Mutual, by its own policy as of June 2010, required the use of salvage/recycled OEM crash parts when negotiating for repairs for motor vehicles in the year of their manufacture or in the succeeding two years without the written consent of the consumer. Petitioner Chandler's

7

presented no evidence to dispute that it used salvage/recycled OEM crash parts to repair vehicles under Liberty Mutual claims without disclosure to or consent from the consumer. The court concluded that although salvage/recycled OEM crash parts meet the statutory definition of "genuine crash parts," they do not comply with the underlying statutory requirement that such parts be "sufficient to maintain the manufacturer's warranty" on that part. On this basis, the circuit court concluded that Liberty Mutual violated W. Va. Code § 46A-6B-3 and § 46A-6-104 and Chandler's violated W. Va. Code § 46A-6B-4 by using salvage/recycled OEM crash parts. On January 18, 2013, the circuit court entered an order amending its December 18, 2012, order and declaring it final for purposes of appeal pursuant to W.Va.R.Civ.P. 54(b).

## II.

### STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v Peavey*, 192 W. Va. 189, 451 S.E.2d 755 (1994). When considering the propriety of summary judgment, the Court applies the same standard that is applied at the circuit court level. "[A] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). If the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, summary judgment must be granted. *Parker v. Estate of Bealer*, 221 W. Va. 684, 687,

8

656 S.E.2d 129, 132 (2007) (*citing Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995)).

Likewise, the standard of appellate review from an order dismissing a claim under W.Va.R.Civ.P. 12(b)(6) for failure to state a claim is *de novo. Sturm v. Board of Educ. of Kanawha County*, 223 W. Va. 277, 280, 672 S.E.2d 606, 609 (2008)(*citing State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995)). The controlling principle of law on appeal, as at the trial court level, is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *See Conrad v. ARA Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996); *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

### III.

### ANALYSIS

Although Petitioners present various assignments of error in this appeal, the primary issue we must first consider is whether the Crash Parts Act applies to salvage/recycled OEM crash parts. As we previously stated, the circuit court determined that the decision it reached in August 1998 in *W.Va. Automotive Dismantlers and Recycler's Association, the W.Va. Insurance Federation, Inc., and State Farm Mutual Automobile Insurance Company v. McGraw, et al.*, Civil Action No. 97-C-2797 (Aug.

9

1998) is still valid and applicable to the current proceedings. In its August 20, 1998, order, the circuit court ruled that

> [w]hen automobile insurance companies negotiate the repair of automobiles, and when motor vehicle body shops repair automobiles using "genuine crash parts" sufficient to maintain the automobile manufacturer's new car warranty for that part, they must first obtain the written consent of the owner of the automobile to be repaired to use "aftermarket crash parts," as defined by the [West Virginia Automotive Crash Parts Act], or "salvage crash parts," as the term has been used in this opinion.

In its December 2012 final order, the circuit court stated that "[h]aving reviewed its 1998 Order, this Court summarily concludes that it was correct in its prior interpretation of the Automotive Crash Parts Act . . ." The circuit court found that "[a]lthough salvage crash parts meet the statutory definition of 'genuine crash parts,' they do not comply with the underlying requirement that such parts be 'sufficient to maintain the manufacturer's warranty' on that part." The court made the following conclusions of law:

> 3. "Salvage crash parts" means "a part manufactured by or for the original manufacturer that is authorized to carry the name or trademark of the original manufacturer, but has been removed from a salvaged vehicle." 1998 Order (August 1998); *State ex rel. McGraw v. Liberty Mutual Insurance Company, et al.*, 2012 WL 1036848 (S.D.W. Va.).

> . . .

> 5. "Recycled genuine original equipment manufacturer parts," as used by the Petitioners, has the same meaning as "salvage crash parts." 1998 Order (Aug. 1998).

> 6. Although salvage crash parts meet the statutory definition of "genuine crash parts," they do not comply with the

10

underlying requirement that such parts be "sufficient to maintain the manufacturer's warranty" <u>on that part</u>.

. . .

21. Having reviewed its 1998 Order, this Court concludes that it was correct in its prior interpretation of the Automotive Crash Parts Act – that "when automobile insurance companies negotiate the repair of automobiles, and when motor vehicle body shops repair automobiles, they must negotiate and effect the repair of the automobiles using new "genuine crash parts" sufficient to maintain the automobile manufacturer's new car warranty for that part, unless they first obtain the written consent of the owner of the automobile to be repaired to use 'aftermarket crash parts,' as defined by the Act, or 'salvage crash parts,' as the term has been used in [the 1998 opinion.]"

22. The language required to be used in the notice to the consumer "if the replacement parts are aftermarket crash parts" set forth in W. Va. Code § 46A-6B-4(b) does not preclude Petitioners from complying with W. Va. Code § 46A-6B-4(a) which requires:

a.      providing a list to the vehicle owner of the replacement crash parts that the body shop intends to use in making repairs, W. Va. Code § 46A-6B-4(a)(1);

b.      specifying whether the replacement parts are genuine crash parts, W. Va. Code § 46A-6B-4(a)(2); and

c.      identifying the manufacturer of the parts <u>if</u> the replacement parts are aftermarket crash parts, W. Va. Code § 46A-6B-4(a)(3).

(Emphasis added).  These disclosures are <u>required</u> to be given to consumers before the motor vehicle body shop begins works on the consumer's vehicle and is clearly intended to include all replacement crash parts intended to be used in the repair whether new, salvaged, or aftermarket.

(Emphasis in original).

11

Petitioners assert that the circuit court committed reversible error in interpreting the Act, as it plainly and unambiguously applies only to the use of "aftermarket" crash parts, not salvage/recycled OEM parts. Petitioners contend that the circuit court not only improperly interpreted the Act, but it modified, revised and amended the Act in order to apply it to the use of salvage/recycled OEM crash parts.

Conversely, the State contends that if the statute did not have the qualifying language with regard to "genuine crash parts," requiring that they be "sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance, then, any genuine crash part could be used without notice to the vehicle owner. W. Va. Code § 46A-6B-3. The State asserts that the use of the qualifying language makes the statute ambiguous because salvage/recycle OEM crash parts do not maintain the manufacturer's warranty. The State points to the circuit court's prior 1998 order in *W.Va. Automotive Dismantlers and Recycler's Association, the W.Va. Insurance Federation, Inc., and State Farm Mutual Automobile Insurance Company v. McGraw, et al.*, Civil Action No. 97-C-2797, wherein the circuit court reasoned that an ambiguity existed in W. Va. Code § 46A-6B-3 by stating:

> There is conflict between the first and second sentences of § 46A-6B-3. A literal reading of the second sentence would permit an insurance company to negotiate with a motor vehicle body shop, a "repairer" under the statutory language, for the use of any "genuine crash parts," including "salvage crash parts." However, a literal reading of the first sentence

12

would prohibit a motor vehicle body shop from using "salvage crash parts," because their use would void automobile manufacturers' new car warranties. Thus, a motor vehicle body shop would be placed in the position of having an insurer pay it to install "salvage crash parts," while it would be required to install new, unused "genuine crash parts." An ambiguity is created insofar as an insurance company may require the use of "salvage crash parts," while a motor vehicle body shop may not install them. (footnote omitted) The Court must resolve the ambiguity created by W. Va. Code § 46A-6B-3.

The State posits that because the statute is remedial in nature, it should be construed in favor of including salvage/recycled OEM crash parts in the notice requirements since the State asserts that they do not maintain the manufacturer's warranty. After thoroughly reviewing the parties' arguments and the pertinent statutory provisions, we conclude that the circuit court's order must be reversed.

With respect to the Crash Parts Act, the intent of the Legislature is plainly set forth in the Declaration for the Act. This provision specifically states that the purpose for the enactment of the Crash Parts Act was "to require disclosure to motor vehicle owners of information on *certain* replacement crash parts for repairs to their motor vehicles and to prevent both motor vehicle body shops and insurance companies from requiring use of *aftermarket* crash parts for repair unless the motor vehicle owner consents in writing at the time of the repair." W. Va. Code § 46A-6B-1 (Emphasis added). As a preliminary matter, we observe that the Legislature's stated purpose for this statute was to limit the use of some, but not all, replacement crash parts. The use of

13

aftermarket crash parts was expressly limited. The use of salvage/recycled OEM crash parts was not.[4]

As stated above, the Crash Parts Act expressly defines aftermarket parts as: "(1) [m]anufactured by a person other than the original manufacturer of the motor vehicle to be repaired; and (2) [f]or which the original manufacturer of the motor vehicle has not authorized the use of its name or trademark by the manufacturer of the crash parts." W.Va. Code § 46A-6B-2(a). Contrary to the definition of aftermarket parts in the Crash Parts Act, salvage/recycled OEM genuine parts are actually manufactured by the original equipment manufacturer, and are authorized to use that manufacturer's name and/or trademark.

The Legislature's intent is also plainly evidenced by the express consent language required by the Crash Parts Act, which mandates that the following notice provision, without any changes, must be used:

---

[4] Petitioners also contend that the intention of the Legislature with respect to the Crash Parts Act is also reflected by its subsequent legislative history since the passage of the Act in 1995. However, the Petitioners are cognizant that this Court has previously commented that it does not believe that "post-enactment legislative history is entitled to substantial consideration in construing a statute." *Appalachian Power Co. v. State Tax Dep't*, 195 W. Va. 573, 587 n. 16, 466 S.E.2d 424, 438 n. 16 (1995). Nonetheless, the Petitioners assert that from 1997 through 2003, ten bills were introduced during the Regular Session of the Legislature seeking to amend the Crash Parts Act and address the use of used or salvage/recycled crash parts. However, none of these bills were passed.

14

THIS ESTIMATE HAS BEEN PREPARED BASED ON THE USE OF *AFTERMARKET CRASH PARTS THAT ARE NOT MANUFACTURED BY THE ORIGINAL MANUFACTURER* OF THE VEHICLE OR BY A MANUFACTURER AUTHORIZED BY THE ORIGINAL MANUFACTURER TO USE ITS NAME OR TRADEMARK. THE USE OF AN *AFTERMARKET* CRASH PART MAY INVALIDATE ANY REMAINING WARRANTIES OF THE ORIGINAL MANUFACTURER ON THAT CRASH PART.

W. Va. Code § 46A-6B-4 (1995) (Emphasis added).


This Court has stated that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). We then examine the precise words chosen by the Legislature in adopting the statute. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)); Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). Where, however, the statutory language is not plain, its language must be construed before it can be applied: "[a] statute that is

15

ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). *Accord* Syl. Pt. 1, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

Furthermore, in *Banker v. Banker*, 196 W.Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) this Court stated, "[i]t is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." More specifically, this Court has further cautioned that "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Division v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989).

The legislative declaration in W. Va. Code § 46A-6B-1, statutory definitions in § 46A-6B-2, and notice provision in § 46A-6B-4 must be read in conjunction with § 46A-6B-3 in ascertaining the intent of the Crash Parts Act. Our rules of statutory construction require us to give meaning to all provisions in a statutory scheme, if at all possible. *See* Syl. Pt. 2, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975) ("In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the

16

general purpose of the legislation."). We must apply statutes so that no legislative enactment is meaningless, and to read them to harmonize with legislative intent. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). In other words, statutes must be read in *pari materia* to ensure that legislative intent is being effected. We have stated that

> [s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in Pari materia to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975). *See also*, Syl. Pt. 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958) ("Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.").

By failing to read the notice provision set forth in W.Va. Code § 46A-6B-4, in *para materia* with W. Va. Code § 46A-6B-3, the circuit court failed to give significance and effect "to every section, clause, word or part of the statute." Syl. Pt. 3, in part, *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). In

17

*Martin v. Randolph County Bd. Of Educ.*, 195 W.Va. 297, 312, 465 S.E. 2d 399, 415 (1995), this Court stated that "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id*. (*quoting Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391, 397 (1992)). *See also, Cunningham v. Hill*, 226 W. Va. 180, 185, 698 S.E.2d 944, 949 (2010).

As further noted by this Court in *Taylor v. Nationwide Mut. Ins. Co.*, 214 W. Va. 324, 328, 589 S.E.2d 55, 59 (2003), when interpreting a statutory provision, courts are "bound to apply, and not construe, the enactment's plain language." Thus, a trial court must favor the plain and obvious meaning of the statute rather than a narrow or strained construction. Furthermore, as this Court noted in *Banker*, 196 W.Va. at 546-547, 474 S.E. at 476-477, the trial court cannot "add to statutes something the Legislature purposely omitted."

In attempting to interpret the Crash Parts Act, the circuit court did not address the legislative intent found in the Act's declaration. Rather, it simply interpreted the Act, relying in part upon its 1998 opinion. Ignoring the express legislative intent, the circuit court determined that salvage/recycled OEM genuine crash parts are the same as aftermarket crash parts and therefore the same notice provisions under the Crash Parts Act for aftermarket crash parts are applicable. The Circuit Court reached this decision despite the fact that the Crash Parts Act does not reference or otherwise include a definition for salvage/recycled OEM genuine crash parts. Further, the Circuit Court

18

concluded that under the Crash Parts Act the statutory definition of aftermarket parts includes salvage/recycled genuine OEM crash parts even though the parts themselves are, as the definitions reveal, diametrically different.

By virtue of its holding unnecessarily interpreting W. Va. Code § 46A-6B-3, the circuit court modified the Crash Parts Act and greatly broadened its application beyond that expressly intended by the Legislature, even though the Act and its purpose is plain and unambiguous. Following our principles of statutory construction, the only logical conclusion is that the Legislature did not address the use of salvage/recycled OEM crash parts in the Crash Parts Act. Otherwise, it would have enacted a specific notice provision for the use of those separately defined parts. Absent legislative direction, we must give effect to the Legislature's use of the term, "*certain* replacement crash parts," and find that the Legislature included such a term for a limiting purpose in terms of coverage by the statute. If it had wanted the statute to apply to salvage/recycled OEM crash parts, the Legislature could have easily done so – as it did with aftermarket crash parts. It is not this Court's prerogative to here legislate additional coverage in a statute that is expressly self-limiting. We therefore decline to do here what the Legislature did not. The circuit court should have presumed that the Legislature said in the Crash Parts Act what it meant, that consent is only required with respect to "aftermarket" crash parts.

19

As the circuit court recognized, "the WVCCPA is not an outright prohibition to the use of crash parts other than genuine OEM crash parts. Rather, it is a consumer protection statute requiring that consumers be notified when aftermarket crash parts are used during the repair process." Although the WVCCPA is a remedial statute designed to protect consumers, the statute does not provide this Court the autonomy to construe and rewrite the Crash Parts Act in a manner inconsistent with express legislative mandate. Importantly, West Virginia Code § 46A-6-101(2) (1974) specifically states that it is the intent of the legislature that the WVCCPA "not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest. . . ." This Court observed in *McFoy v. Amerigas, Inc.*, 170 W. Va. 526, 529, 295 S.E.2d 16, 20 (1982), that whenever a trade practice is challenged, "the lawfulness of the challenged practice must be measured by whether that activity was reasonable in relation to the development and preservation of business. . . ."

We observe the competing interests at stake in this appeal – insurance companies' efforts to further reduce the cost of premiums for its insureds and the market competition that the use of salvage/recycled OEM and aftermarket crash parts generates, versus the public policy interests of requiring disclosure to motor vehicle owners of information on certain replacement crash parts for repairs to their motor vehicles. This is a policy determination and, in our system of governance, one best left to the Legislature. Unless and until our legislature expressly mandates that insurers and automobile repair

20

shops must disclose and obtain consent prior to using salvage/recycled OEM crash parts in the repair of consumers' automobiles, we will not judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. *See State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965). Such powers are not within the purview of this Court.

As we stated in *Subcarrier Communications, Inc. v. Nield*, 218 W. Va. 292, 299 n. 10, 624 S.E.2d 729, 736 n. 10 (2005), "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten." We also observed in *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009), that

> [t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subject of legislation. It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions. *Boyd v. Merritt*, 177 W. Va. 472, 474, 354 S.E.2d 106, 108 (1986). *See also, Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 692 408 S.E.2d 634, 642 (1991) ("the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."); Syllabus Point 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965)("Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary.")

21

*Huffman*, 223 W. Va. at 728, 679 S.E.2d at 327.  Furthermore, with regard to matters of

legislative policy, we have recognized that,

> [i]f the Legislature has promulgated statutes to govern a specific situation yet is silent as to other related but unanticipated corresponding situations, it is for the Legislature to ultimately determine how its enactments should apply to the latter scenarios . . . When specific statutory language produces a result argued to be unforeseen by the Legislature, the remedy lies with the Legislature, whose action produced it, and not with the courts.  The question of dealing with the situation in a more satisfactory or desirable manner is a matter of policy which calls for legislative, not judicial, action. *Worley v. Beckley Mech., Inc.*, 220 W. Va. 633, 643, 648 S.E.2d 620, 630 (2007).

*Soulsby v. Soulsby*, 222 W. Va. 236, 247, 664 S.E.2d 121, 132 (2008).


Lastly, in addition to finding that the Petitioners violated the Crash Parts

Act,  the circuit court also found that Petitioners violated W. Va. Code § 46A-6-104[5] by

concealing, suppressing or omitting the material facts as to the types of parts used to

repair consumers' vehicles in a consumer transaction.   In its order, the circuit court

concluded that

> the type and quality of parts being used to repair a consumer's motor vehicle, i.e. -  salvaged crash parts, are material facts. West Virginia Code § 46A-6-102(7)(M) defines an unfair or deceptive act or practice to include 'the concealment,

---

[5] West Virginia Code § 46A-6-104 (1974) provides,

> [u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services. . . .

However, because we conclude that the Crash Parts Act is inapplicable to the Petitioners' conduct alleged in this appeal and thus, Petitioners have not engaged in an unfair or deceptive act or practice prohibited by express legislative mandate, we find that the circuit court erred and decline to now create a separate judicial cause of action under the CCPA simply because salvage/recycled OEM crash parts were being used in the repair of automobiles involved in this case.[6]

## IV.

### CONCLUSION

For the foregoing reasons, we find that the circuit court exceeded its jurisdiction and committed reversible error. Accordingly, we reverse the December 13, 2012, order of the Circuit Court of Kanawha County and remand this matter for further proceedings consistent with this Opinion.

**Reversed and Remanded.**

---

[6] Because we conclude that the circuit court's order must be reversed on these issues, it is not necessary for this Court to address the Petitioners' remaining assignments of error.

23