301 S.E.2d 183

The OHIO COUNTY COMMISSION

v.

A. James MANCHIN, W.Va.
Sec'y of State.

No. 15772.

Supreme Court of Appeals
of West Virginia.

March 10, 1983.

Chauncey H. Browning, Jr., Atty. Gen., Victor A. Barone, and Gregory W. Bailey, Deputy Attys. Gen., Charleston, for appellant.

Landers P. Bonenberger, Wheeling, for appellee.

MILLER, Justice:

In this case we are asked to overturn the Circuit Court of Kanawha County's interpretation of W.Va.Code, 3–4A–28(4) (1982), relating to the manual counting of electronic voting ballots.[1] Briefly stated, the court held that this subsection requires only the ballot cards be manually counted and not the actual votes contained on the ballots. The Secretary of State, the appellant, contends this ruling is erroneous as it essentially renders the subsection meaningless because merely manually counting the number of ballots will not test the accuracy of the voting machine's tabulation of the actual votes on each ballot. We agree.

The Ohio County Commission, the appellee, argues that a literal reading of Subsection 4 must focus on the phrases that "the *ballot cards* cast therein [be] counted manually" and "a manual recount of all *ballot cards* shall be required." (Emphasis added) It points to the definition of the term "ballot cards" contained in W.Va.Code, 3–4A–2(b): " 'Ballot card' means a tabulating card or paper on which votes may be recorded by means of perforating or marking in electronic sensitized ink or pencil." From this definition, the Commission asserts that it is a manual count of the card itself that is required. The Commission maintains that the language of Subsection

4 is plain and unambiguous and, therefore, there is no need for us to interpret the Subsection by way of ascertaining the legislative intent. It cites: *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968); *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897 (1974); *Johnson v. Robinson*, 162 W.Va. 579, 251 S.E.2d 505 (1979); *State ex rel. Underwood v. Silverstein*, 167 W.Va. 121, 278 S.E.2d 886 (1981). Syllabus Point 2 of *State v. Elder, supra,* states: "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Although the Commission argues that Subsection 4 is free from ambiguity, we do not find it to be so.

The question in this case cannot be resolved by only a reference to the definition of the term "ballot card." The term "automatic tabulating equipment" is also used in Subsection 4 with regard to the counting process in that "[t]he same random selection shall also be counted by the automatic tabulating equipment." As defined in W.Va.Code, 3–4A–2(a), " '[a]utomatic tabulating equipment' means all apparatus necessary to electronically count votes recorded on ballot cards and tabulate the results." Thus, the results obtained from the automatic tabulating equipment would ordinarily be a tally of votes cast for the various offices. If the manual count of the ballots which is required by Subsection 4 and which must be compared with the results of the automatic tabulating equipment count is to have any validity, it would seem that the manual count must be of the votes and not merely the individual ballot cards.

The Legislature could have removed any ambiguity by inserting the words "the votes contained on" in front of the words

---

1. W.Va.Code, 3–4A–28(4) (1982), provides:
   "During the canvass and any requested recount, at least five percent of the precincts shall be chosen at random and the ballot cards cast therein counted manually. The same random selection shall also be counted by the automatic tabulating equipment. If the variance between the random manual count and the automatic tabulating equip-

ment count of the same random ballots, is equal to or greater than one percent, then a manual recount of all ballot cards shall be required. In the course of any recount, if a candidate for an office shall so demand, or if the board of canvassers shall so elect to recount the votes cast for an office, the votes cast for that office in any precinct shall be recounted by manual count."

"ballot cards" in the first sentence.[2] Perhaps, the Legislature believed that by defining "ballot cards" in W.Va.Code, 3–4A–2(b), as "a tabulating card or paper on which votes may be recorded," it would be apparent that a manual count of the cards meant a manual count of the votes contained on the cards. The last sentence of Subsection 4 relating to the recount does illustrate a clarity of expression in regard to counting the votes: "In the course of any recount, if a candidate for an office shall so demand, or if the board of canvassers shall so elect to recount the votes cast for an office, the votes cast for that office in any precinct shall be recounted by manual count."

The clarity of this last sentence using as it does the word "votes" may be explained by the fact that on a recount it is the candidate for a specific office who requests the recount. Therefore, the phrasing of the last sentence in Subsection 4 is designed to ensure that the board of canvassers need only manually count the votes on the various ballot cards for that office. Thus, the use of the generic term "ballot cards" with a manual count would be inappropriate in a recount context and for this reason the term "votes" was inserted.

■ As the foregoing discussion illustrates, we find W.Va.Code, 3–4A–28(4), to be ambiguous as to whether a manual count of the votes or the ballot cards is mandated under the five percent random selection of precincts requirement. We have rather uniformly held that judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent. *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970); *Hood v. City of Wheeling*, 85 W.Va. 578, 102 S.E. 259 (1920); *Wellsburg and State Line Railroad Company v. Panhandle Traction Company*, 56 W.Va. 18, 48 S.E. 746 (1904); 17 Michie's Jurisprudence *Statutes* § 34 (1979).

■ Another familiar rule is that in ascertaining the legislative intent the statute should be read as a whole. *Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238 (1978); *Spencer v. Yerace*, 155 W.Va. 54, 180 S.E.2d 868 (1971); *United Fuel Gas Co. v. Battle*, 153 W.Va. 222, 167 S.E.2d 890 (1969), *cert. denied*, 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309.

In *State ex rel. Manchin v. Lively*, 170 W.Va. 672, 295 S.E.2d 912, 915–16 (1982), we considered whether Subsection 4 was applicable to a recount occurring after the effective date of the Act even though the election was held prior to the effective date of the statute, and in the course of the opinion, we said:

"The particular section relied upon, W.Va.Code, 3–4A–28 [1982], amended the existing section to provide for a right upon the convass and any requested recount, where voting was done by electronic voting, to have five percent of the precincts randomly selected and their ballots subject to a manual count. We find that this provision has nothing to do with the initial voting procedures but is designed as a procedural device to come into play upon the canvass or any requested recount as a means of testing the accuracy of the tabulation obtained through the electronic voting device." (Brackets in original and footnote omitted)

While we were not confronted with the precise issue that we have here, it is clear that the purpose of Subsection 4 is, as we stated in *State ex rel. Lively v. Manchin*, 170 W.Va. at 676, 295 S.E.2d at 916, "a means of testing the accuracy of the tabulation obtained through the electronic voting devices." This conclusion arises from a reading of the various amendments made in 1982 to Article 4A relating to electronic voting systems. 1982 W.Va.Acts ch. 60. Many of these amendments relate to either new or more detailed provisions for safeguarding the accuracy and performance of the electronic voting system such as set-

---

**2.** The first sentence of Subsection 4 with the new language in brackets would then read: "During the canvass and any requested recount, at least five percent of the precincts shall be chosen at random and the [votes contained on the] ballot cards cast therein counted manually."

ting minimum requirements of the system,[3] inspecting the system,[4] and the checking of its accuracy before using the system on election day.[5]

Moreover, when we compare the new provisions of W.Va.Code, 3–4A–28 (1982), with its predecessor's language, we see a further manifested legislative intent for a manual count of the votes on the ballot card. Under the former Subsection 1 of W.Va.Code, 3–4A–28 (1969), the ballot cards were required to remain "sealed during the canvass of the returns of the election." However, under the 1982 amendment, Subsection 1 was amended to include "except that such equipment may be opened for the canvass." [6] This would suggest that the ballot cards are made available at the canvass to comply with the provisions of new Subsection 4 relating to the five percent random selection of precincts requirement.

It is also of some interest that old Subsection 3 of W.Va.Code, 3–4A–28 (1969), provided that upon a recount "the ballots and ballot cards shall not be reexamined during such recount for the purpose of reascertaining the total number of votes cast for any candidate." This Subsection was revised in 1982 to remove this prohibitory language. In lieu thereof, the recount begins in the same fashion as "the original vote count pursuant to section twenty-seven of this article." W.Va.Code, 3–4A–28(3) (1982).[7]

From new Subsection 3, which removes the bar on manual vote counting of the ballot card votes and provides for the recount to proceed in the same manner as the original vote count, we are led to new Subsection 4 which contains the manual count provision. These statutory changes to Section 28 indicate the legislative decision to depart from a complete reliance on the electronic tabulating equipment results. The 1982 amendments reflect an intention to permit a limited form of manual counting of votes in both the canvass and on any recount.

 Thus, we are brought to the conclusion that W.Va.Code, 3–4A–28(4) (1982), should be construed to mean that during the canvass and any requested recount, at least five percent of the precincts shall be chosen at random and the votes on the ballot cards cast therein counted manually.

For the foregoing reasons, the decision of the Circuit Court of Kanawha County is reversed.

Reversed.

3. W.Va.Code, 3–4A–9 (1982).

4. W.Va.Code, 3–4A–13 (1982).

5. W.Va.Code, 3–4A–17 & 26 (1982).

6. The full text of W.Va.Code, 3–4A–28(1) (1982), is:

"The vote recording devices, the ballot labels, ballot cards, program decks and standard validation test decks shall remain sealed during the canvass of the returns of the election and for a period of seven days thereafter, except that such equipment may be opened for the canvass and it shall be resealed immediately thereafter. During such period any candidate or the local chairman of a political party may be permitted to examine any of the materials so sealed: Provided, that a notice of the time and place of such examination shall be posted at the central counting center before and on the hour of nine o'clock in the morning on the day the examination is to occur, and all persons entitled to be present at the central counting center may, at their op-

tion, be present. Upon completion of the canvass and after a seven-day period has expired, the vote recording devices, the ballot labels, ballot cards, program decks and standard validation test decks shall be sealed for one year: Provided, however, that the vote recording devices and all tabulating equipment may be released for use in any other lawful election to be held more than ten days after the canvass is completed, and any of the electronic voting equipment herein discussed may be released for inspection or review by a request of a circuit court or the supreme court of appeals."

7. The text of W.Va.Code, 3–4A–28(3) (1982), is:

"If any candidate shall demand a recount of the votes cast at an election, the ballots and ballot cards shall be reexamined during such recount for the purpose of reascertaining the total number of votes cast for any candidate in the same manner and according to the same rules as are utilized in the original vote count pursuant to section twenty-seven [§ 3–4A–27] of this article." (Brackets in original)