ORDER
FORDHAM, JUDGE:
An application for the claimant, Mark A. Burnett, for an award on behalf of the estate of his daughter, Melissa A. Burnett, was filed May 11, 2007, under the West Virginia Crime Victims Compensation Act. The report of the Claim Investigator, filed September 20,2007, recommended that no award be granted, to which the claimant filed a response in disagreement. The Court issued an Order on December 12, 2007, upholding the Investigator’s recommendation. The claimant filed a request for hearing on January 8, 2008, and the matter came on for hearing April 9, 2008, the claimant appearing by counsel Ronald W. Kasserman, and the State of West Virginia by counsel, Ronald R. Brown, Assistant Attorney General. Testimony was heard by Judge John G. Hackney Jr. who sat as hearing examiner.
*353 On June 8, 2006, the claimant’s twenty-four-year-old daughter, Melissa A. Burnett, was the alleged victim of criminally injurious conduct in Moundsville, Marshall County. The victim was at her residence with Michael Runyon, Jeremy Hall, Amanda Welling, and the offender, Larry Steven Welling.[35] The individuals were taking injections of heroin.[36] According to the police report, Ms. Welling stated that the victim wanted to try heroin, but she was unable to give herself the injection because her hands shook from a medical condition.[37] When the offender injected heroin into the top of the victim’s left hand, she immediately showed signs of overdosing and lost consciousness. The group resorted to home remedies in order to revive her, but these methods proved futile.
The offender called 911 and advised that the victim was not breathing and may have overdosed. The police officer arrived at the residence and found that the victim had a pulse, but it was slow. The paramedics arrived and performed CPR. The victim was then transported to Reynolds Memorial Hospital where she was pronounced dead. The Court is sympathetic to the claimant for the loss of his daughter and extends its respect to the family in this tragic situation.
The victim’s body was transported to the State Medical Examiner’s Office for an autopsy. The results of the autopsy indicate that the victim died as the result of combined cocaine and morphine intoxication in the setting of parenteral (needle) drug abuse.[38]
Larry Welling is serving a sentence on an Alford plea for voluntary manslaughter relating to the victim’s death; he was sentenced to twelve (12) years in jail. According to the Alford plea agreement, Mr. Welling was also sentenced to not less than one (1) nor more than fifteen (15) years for the felony offense of “Delivery of a Controlled Substance.” These sentences are to run concurrently.
Claimant contends that his daughter was involuntarily injected with drugs, and when she overdosed, there was an intentional delay in calling 911 for medical assistance which resulted in her death. He asserts that there is no direct evidence that the victim was a voluntary participant in receiving the injection.
The claimant brings this appeal in response to the Court’s Order dated December *354 12,2007. In this Order, the Court adopted the Claim Investigator’s finding that no award be granted because the victim was not free from contributory misconduct.
West Virginia Code § 14-2A-3(1) defines “Contributory Misconduct” as follows:
“Contributory misconduct” means any conduct of the claimant, or of the victim through whom the claimant claims an award, that is unlawful or intentionally tortious and that, without regard to the conduct’s proximity in time or space to the criminally injurious conduct, has causal relationship to the criminally injurious conduct that is the basis of the claim and shall also include the voluntary intoxication of the claimant, either by the consumption of alcohol or the use of any controlled substance when the intoxication has a causal connection or relationship to the injury sustained. The voluntary intoxication of a victim is not a defense against the estate of a deceased victim.
The claimant contends that the Court failed to consider the express language in W.Va. Code § 14-2A-3(1). In particular, he argues that the Court failed to apply the last sentence in the statute which states, “The voluntary intoxication of a victim is not a defense against the estate of a deceased victim.” Id. Claimant asserts that the language in the statute is clear and should be applied, not construed. “A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute.” Syl. Pt. 3, Meadows v. Wal-Mart Stores, Inc., 207 W.Va. 203, 530 S.E.2d 676 (1999).[39] The claimant contests the voluntary intoxication of the victim and argues that even if the Court found that the victim was voluntarily intoxicated, her voluntary intoxication is not a defense against her estate under W.Va. Code § 14-2A-3(1).
The claimant further contends that the Legislature intended to limit recovery to the victim’s estate under the last sentence in W.Va. Code § 14-2A-3(1). The estate’s recovery would be limited to $6,000.00 for funeral and burial expenses pursuant to W.Va. Code § 14-2A-3(f)(2). Under W.Va. Code § 14-2A-3(1), a claimant is excluded from recovering lost wages or medical expenses if there was a finding that the claimant was voluntarily intoxicated. Therefore, the Legislature expressly limited recovery to the victim’s estate.
Respondent avers that the literal meaning of W.Va. Code § 14-2A-3(1) would lead to absurd results that the Legislature did not intend when it enacted the statute. In State v. Kerns, 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990), the Court stated that it has an obligation to avoid a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.
*355 Respondent argues that if the Court read the statute as claimant suggests, then the last sentence in W.Va. Code § 14-2A-3(1) would conflict with the purpose of the Crime Victims Compensation Fund (the Fund) and the preceding portion of the statute. During the hearing, respondent argued that the Court cannot interpret the last sentence in the statute without understanding the importance of the phrase “causal connection” in the preceding phrase. V oluntary intoxication constitutes contributory misconduct "...when the intoxication has a causal connection or relationship to the injury sustained. "W.Va. Code § 14-2A-3(1). According to the respondent, the voluntary intoxication of a victim is not a defense against the estate of a victim when there is no causal connection or relationship to the injury sustained. Respondent asserts that this interpretation would reconcile the last sentence with the preceding portion of W.Va. Code § 14-2A-3(1).
Furthermore, respondent asserts that under W.Va. Code § 14-2A-2, the purpose of the Fund is to compensate “innocent victims” of crime. Respondent avers that providing compensation to the estate of a deceased victim where the victim had become voluntarily intoxicated, and the intoxication was the proximate cause of the victim’s death, would contradict the purpose of the statute. In addition, he argues that W.Va. Code § 14-2A-14(c) precludes a judge from approving an award to the offender or an accomplice of the offender who committed the criminally injurious conduct.[40]
The interpretation of W.Va. Code § 14-2A-3(1) presents an issue of first impression for the Court. The Court must first examine the rules of statutory construction to determine whether the statute is ambiguous or clear on its face. “Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.” Syl. Pt. 3, Francis O. Day Co., Inc. v. Director, Div. of Envtl. Protection, 191 W.Va. 134, 443 S.E.2d 602 (1994). A statute can be interpreted when there is ambiguous language which makes it “...susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.” Crockett v. Andrews, 153 W.Va. 714, 718, 172 S.E. 2d 384, 386 (1970).
Ambiguity is a term connoting doubtfulness, doubleness of meaning of indistinctness or uncertainty of an expression used in a written instrument. It has been declared that courts may not find ambiguity in statutory language which laymen are readily able to comprehend; nor is it permissible to create an obscurity or uncertainty in a statute by reading in an additional word or words.
Id. at 718-19, 387. The Court should interpret a statute only if it is ambiguous, and the first step in the inquiry is to ascertain the intent of the Legislature. Ohio County Comm’n v. Manchin, 171 W.Va. 552, 554, 301 S.E.2d 183, 185 (1983). In ascertaining the intent of the Legislature the statute should be read as a whole. Id.
*356 The well reasoned arguments made by counsel for the claimant and counsel for the respondent compel the Courtto conclude that the last sentence in W.Va. Code § 14-2A-3(1) is ambiguous and susceptible to different interpretations. The Court must first examine the intent of the Legislature in creating the statute. Despite the claimant’s argument that the Legislature exclusively intended to provide recovery to the victim’s estate, this approach to reading W.Va. Code § 14-2A-3(1) would lead to an irreconcilable conflict with the purpose and intent of the Legislature as set forth in W.Va. Code § 14-2A-2.[41] The Fund was established to compensate “innocent victims” of crime.
The portion of W.Va. Code § 14-2A-3(1) that deals specifically with the voluntary intoxication of the victim states:
“Contributory misconduct”...shall also include the voluntary intoxication of the claimant, either by the consumption of alcohol or the use of any controlled substance when the intoxication has causal connection or relationship to the injury sustained. The voluntary intoxication of a victim is not a defense against the estate of a deceased victim. Id. (Emphasis added).
The Legislature distinguishes between instances where the voluntary intoxication of the victim has a “causal connection” or “relationship” to the injury sustained and cases where there is no “causal connection” or “relationship.”
The Court concludes that, where the victim was engaged in contributory misconduct that was causally connected to the criminally injurious conduct, the voluntary intoxication of the victim does not serve as a defense against the victim’s estate. The voluntary intoxication of the victim only serves as a defense against the victim’s estate where there is no causal connection between the victim’s intoxication and the criminally injurious conduct. Although the Legislature did not include the words “causal connection” in the last sentence of the statute, the Court cannot infer that the Legislature intended to omit this analysis when interpreting the meaning of the statute when read as a whole.
In the instant case, the Court finds that there was insufficient evidence established at the hearing to prove that the victim was free from contributory misconduct. Since the victim’s voluntary intoxication was causally connected to her death, the Court is constrained by the evidence to uphold its prior ruling.
Based on the foregoing, the Court affirms its previous ruling. Therefore, the claim must be, and is hereby, denied.

 The victim’s boyfriend was Michael Runyon, whom she dated off and on for a couple of years and who was living with her on the date of this incident. Michael Runyon had invited Larry Welling and Amanda Welling to live with them because they had a newborn baby and needed a place to live. Jeremy Hall was a friend of Larry Welling who had been at the victim’s residence for several days.

 According to Claimant’s Brief, Larry Welling and Amanda Welling are admitted intravenous drug users of cocaine and heroin.

 Claimant disputes that his daughter died as a result of her voluntary intoxication.

 Morphine was found in the victim’s body because heroin breaks down into morphine after it is injected into the body.

 See also State ex. rel. Johnson v. Robinson, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979) “It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning.”

W.Va. Code § 14-2A-14(c) provides as follows:
“The judge or commissioner may not approve an award of compensation to a claimant who is the offender or an accomplice of the offender who committed the criminally injurious conduct, nor to any claimant if the award would unjustly benefit the offender or his or her accomplice.”

 W.Va. Code § 14-2A-2 states, in pertinent part, as follows:
“The Legislature now finds that the system of compensation established by the act as an experimental effort by the Legislature of this state on behalf of its people, after having been reviewed and perfected in its initial stages, should be continued and retained in the legislative branch of government as an expression of a moral obligation of the state to provide partial compensation to the innocent victims of crime for injury suffered to their person or property.”