IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

**FILED**
**November 2, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-0228

MONONGAHELA POWER COMPANY,
Defendant Below, Petitioner

v.

MICHAEL A. BUZMINSKY and VICKIE BUZMINSKY,
Plaintiffs Below, Respondents

Appeal from the Circuit Court of Kanawha County, West Virginia
The Honorable Carrie L. Webster, Judge
Civil Action No. 18-C-500

AFFIRMED

Submitted:  October 7, 2020
Filed:  November 2, 2020

E. Taylor George, Esq.
Arden J. Cogar, Jr., Esq.
MacCorkle Lavender, PLLC
Charleston, West Virginia
Attorneys for Petitioner

Stephen B. Farmer, Esq.
Robert A. Campbell, Esq.
Brian E. Bigelow, Esq.
Jennifer D. Roush, Esq.
Farmer, Cline & Campbell, PLLC
Charleston, West Virginia
Attorneys for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE JENKINS, deeming himself disqualified, did not participate in the decision of this case.
JUDGE MICHAEL J. OLEJASZ, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "A circuit court's denial of summary judgment that is predicated on [] immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."  Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009).

2.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995).

3.      "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent."  Syl. Pt. 1, *Ohio Cty. Comm'n v. Manchin*, 171 W. Va. 552, 301 S.E.2d 183 (1983).

4.      The immunity established for "duly qualified emergency services workers" pursuant to West Virginia Code § 15-5-11(a) (2006) applies only to individual employees and does not extend to such employee's private employer or corporate entity.

5.      "In a joint action of tort against master and servant, the plaintiff may dismiss the servant for a reason not going to the merits, without impairing his right to proceed against the master, although the latter is liable only under the doctrine of

i

respondeat superior." Syl. Pt. 1, *O'Dell v. Universal Credit Co.*, 118 W. Va. 678, 191 S.E. 568 (1937).

WORKMAN, Justice:

This is an appeal of the Circuit Court of Kanawha County's denial of petitioner Monongahela Power Company's ("Mon Power") motion to dismiss on the basis of statutory immunity. Mon Power argued that it is immune from liability for the allegations contained in respondents Michael and Vickie Buzminsky's ("respondents") complaint because the allegations involve emergency services undertaken by a duly qualified emergency services worker, which acts are immune pursuant to West Virginia Code § 15-5-11(a) (2006). The circuit court denied the motion, finding that 1) the statutory immunity does not extend to corporate entities; 2) respondents sufficiently alleged willful misconduct, an exception to the immunity; and 3) disputed issues of fact precluded dismissal at this stage.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the circuit court correctly determined that a private corporate entity or employer is not entitled to immunity under West Virginia Code § 15-5-11(a) and therefore affirm its June 28, 2019, order.

## I. FACTS AND PROCEDURAL HISTORY

On June 23, 2016, the Greenbrier River flooded, prompting a declaration of a state of emergency by then-Governor Earl Ray Tomblin. The City of Ronceverte's ("City") wastewater treatment plant was flooded, causing an interruption in electrical service. After the floodwaters abated, on June 29, 2016, Mon Power restored power to the

1

plant, allegedly upon request of a City employee. After the initial restoration of power, the plant experienced a "loss of phase on the power service." This loss of phase prompted Mon Power to inspect, determining that the loss of phase was the result of a problem with the City's equipment and not Mon Power's. In their complaint, respondents allege that, despite its knowledge of the continued electrical issues, Mon Power left the plant energized. The City then hired HSC LLC (defendant below) to repair the equipment and it sent its employee, respondent Michael Buzminsky, to perform the repairs. Allegedly wearing no appropriate personal protective equipment, Mr. Buzminsky contacted a live bus bar, causing him to be electrocuted and injured.

Respondents filed a complaint against Mon Power and its parent company, First Energy, the West Virginia Department of Environmental Protection ("DEP") and one of its agents,[1] and HSC LLC. Respondents pled negligence[2] against Mon Power, alleging that it "negligently, carelessly and/or recklessly failed to exercise the appropriate care and follow the applicable company and industry standards in restoring power [to] the Plant."

---

[1] Respondents alleged that the DEP "threatened the City with fines" if it did not restore service to the plant and did so despite being warned that it was unsafe without a more thorough inspection of the electrical components that were submerged in the floodwaters.

[2] In contrast, respondents alleged "willful, oppressive, and/or malicious conduct" against DEP and its agent.

2

Mon Power filed a motion to dismiss for lack of subject matter jurisdiction, asserting the court had no jurisdiction over it because it was statutorily immune. Citing the immunity extended to emergency services workers pursuant to West Virginia Code § 15-5-11(a), it argued that since the City "order[ed]" it to restore power to the plant, it was acting at the City's direction in providing emergency services and was therefore immune under the statute. The circuit court denied the motion via email from its law clerk, which ostensible ruling was immediately appealed. However, an order incorporating the ruling set forth in the email was not entered by the court until approximately two months later, on June 28, 2019.

In denying the motion, the circuit court found that a corporate entity such as Mon Power does not qualify as an "emergency service worker" under the statute, as that term is defined as including only an "employee" and not the corporate employer.[3] The court alternatively found that the statutory immunity asserted by Mon Power is subject to an exception for "willful misconduct" and that respondents had sufficiently alleged facts to support such an allegation, but also granted further leave to amend their complaint in that respect. Notwithstanding these rulings which were first set out by email, in its order—entered after Mon Power had filed its notice of appeal—the court additionally found that

---

[3] The court further found that Mon Power was not acting as an employee of the City at the time of the underlying incident. However, we do not perceive of any such argument below or before this Court.

3

there were material facts which "hinder[] and make[] any dispositive ruling on the issue of immunity premature at this early stage in discovery."[4]

## II. STANDARD OF REVIEW

This Court has held that "[a] circuit court's denial of summary judgment that is predicated on [] immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009). Moreover, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

## III. DISCUSSION

This appeal requires us to determine whether a private corporate entity or employer is statutorily immune from liability under West Virginia Code § 15-5-11(a) for acts which constitute "emergency services" or, alternatively, whether it may vicariously benefit from the immunity of its employees acting as "duly qualified emergency services workers."[5] We begin with a review of the applicable statutory language.

---

[4] The circuit court preemptively denied a stay pending this appeal in its email ruling, citing a litany of discovery issues and deadlines. However, on April 11, 2019, this Court granted Mon Power's motion for stay.

[5] In addition to the immunity granted to "duly qualified emergency service workers," West Virginia Code § 15-5-11(a) grants immunity to the state, political subdivisions, and agencies of the state or political subdivisions for emergency services. (continued . . .)

Chapter 15, article 5 of the West Virginia Code governs the "Division of Emergency Management" and section 11 establishes "[i]mmunity and exemption," providing, in pertinent part:

> (a) All functions hereunder and all other activities relating to emergency services are hereby declared to be governmental functions. *Neither the state* nor any political subdivision nor any agency of the state or political subdivision ***nor***, except in cases of willful misconduct, ***any duly qualified emergency service worker*** *complying with or reasonably attempting to comply with this article or any order, rule, regulation or ordinance promulgated pursuant to this article*, ***shall be liable for the death of or injury to any person or for damage to any property as a result of such activity.*** This section does not affect the right of any person to receive benefits or compensation to which he or she would otherwise be entitled under this article, chapter twenty-three of this code, any Act of Congress or any other law.

(emphasis added). Subsection (c)(1) defines "duly qualified emergency service worker" [6] as:

> Any duly qualified full or part-time paid, volunteer or auxiliary *employee* of this state, or any other state, territory, possession or the District of Columbia, of the federal government, of any neighboring country or political subdivision thereof or *of any*

---

This opinion does not purport to speak to these entities and any references herein to "employers" or "corporate entities" specifically exclude the governmental entities identified in the statute.

[6] There are two additional subcategories of definitional "emergency services worker"—dealing with instructors and students in emergency services educational programs and mine rescue teams— neither of which are applicable here. *See* W. Va. Code § 15-5-11(c)(2) and (3).

*agency or organization performing emergency services*[7] *in this state* subject to the order or control of or pursuant to the request of the state or any political subdivision thereof.

---

[7] West Virginia Code § 15-5-2(a) (2020) defines "emergency services," in part, as "the preparation for and the carrying out of all emergency functions . . . *to protect, respond, and recover*, . . . *to minimize and repair injury and damage* resulting from disasters or other event *caused by flooding*, terrorism, enemy attack, sabotage, or other natural or other man-made causes." (emphasis added). These broad categories of "emergency functions" are more specifically defined as including, "without limitation":

> firefighting services, police services, medical and health services, communications, emergency telecommunications, radiological, chemical, and other special weapons defense, evacuation of persons from stricken areas, emergency welfare services, emergency transportation, existing or properly assigned functions of plant protection, *temporary restoration of public utility services* and other functions related to the health, safety, and welfare of the citizens of this state, together with all other activities necessary or incidental to the preparation for and carrying out of these functions. . . .

*Id*. (emphasis added).

Mon Power, without discussion or challenge, asserts that its restoration of power to the plant falls under the category of "minimiz[ing] and repair[ing] injury and damage" and specifically constituted "*temporary* restoration of public utility services." *Id.* (emphasis added). It fails to articulate how the restoration of power service to the City constituted "temporary" restoration of service. The only reference to this requirement in Mon Power's brief states that respondents have "admitted" that Mon Power "was working to temporarily restore public utility services caused by flooding." Its citation to the record in support of this statement, however, is merely a reference to the complaint describing the restoration of power—nowhere does the complaint admit a "temporary" restoration of power. In fact, by way of contrast, the complaint details the use of generators to temporarily power specific equipment in the plant until such time as the electrical panels could dry out and unknown damage could be ascertained. In their brief, respondents momentarily speak to this issue stating "Mon Power's acts in restoring power to the Plant were not the result of a coordination of state and city resources, facilities, and funding. Mon Power was at the Plant as a business that was servicing a customer's account."

However, because respondents did not challenge this characterization of Mon Power's conduct as constituting "emergency services," we do not reach the issue of how
(continued . . .)

(emphasis and footnote added).

Mon Power argues that, despite the statutory language limiting the definition of "emergency services worker" to an "employee," the statute's purpose supports the conclusion that a corporate entity or employer is not necessarily expressly excluded from this immunity and, in fact, should fall within its ambit. In particular, Mon Power points to the opening statement of the immunity provision which provides that "[a]ll functions hereunder and all other activities relating to emergency services are hereby declared to be governmental functions." *Id*. § 15-5-11(a). It argues that it is the emergency *function* which is immunized under the statute, which immunity should extend to anyone—natural person or corporate entity—involved in such functions.

Mon Power further cites the statement of "policy and purpose" set forth in West Virginia Code § 15-5-1 (2014), providing that it is the purpose of the article to "coordinate[] to the maximum extent"

> with the Secretary of the Department of Military Affairs and Public Safety and with the comparable functions of the federal government including its various departments and agencies, of other states and localities *and of private agencies of every type*, so that the most effective preparation and use may be made of the nation's and this state's manpower, resources and facilities

---

the broad "recovery" and "repair" language contained within the statutory definition of "emergency services" interrelates with the more specific acts expressly delineated therein. Instead, we limit our analysis to whether Mon Power, as a private corporate entity and employer, is immune.

7

for dealing with any disaster or large-scale threat that may occur.

(emphasis added). In that regard, Mon Power argues that the intent of the statutory scheme is to coordinate all emergency response activities, characterize them as actions of the government, and bestow immunity upon their actors—both corporate and individual. It urges that the statute and the immunity it grants must be construed in light of the "structure and purpose of the Act in which it occurs" and that to exclude corporate entities from the scope of its immunity would thwart the very collaborative efforts it intends to encourage by leaving those entities potentially more concerned with liability than cooperation. *See W. Va. Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 338, 472 S.E.2d 411, 423 (1996) ("The language of the statute is only the beginning point. To determine legislative intent, we start with the text of the statute in question and then move 'to the structure and purpose of the Act in which it occurs.'" (quoting *N. Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995))).

Respondents counter that the statute is clear and unambiguous and grants immunity only to individual employees and not their corporate employers. They contend that had the Legislature wished to extend the immunity to a corporate entity, instead of using the term "employee," it easily could have used the term "person" which is defined in the same article as including both individuals *and* corporations or entities: "'Person' means any individual, *corporation*, voluntary organization or entity, partnership, firm, or other

8

association, *organization, or entity* organized or existing under the laws of this or any other state or country[.]"[8]  W. Va. Code § 15-5-2(k) (emphasis added).  Respondents further note the use of the terms "his," "her," "he," and "she" in the following subsection regarding workers performing under an agreement or mutual aid, as reinforcing its exclusive applicability to natural persons.  *See id*. § 15-5-11(d) ("A duly qualified emergency service worker performing his or her duty in this state . . . shall possess the same powers, duties, immunities and privileges he or she would possess if performing the same duties in his or her own state[.]").[9]

It is well-established that "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous[.]" Syl. Pt. 1, in part, *Ohio Cty. Comm'n v. Manchin*, 171 W. Va. 552, 301 S.E.2d 183 (1983).  Accordingly, Mon Power's urging for this Court to review the "structure and purpose of the Act" in deciding the issue is misplaced.  Only

---

[8] Respondents further observe that the Legislature did precisely that in the next section, providing immunity to "[a]ny *person* owning or controlling real estate" who allows the property to be used for shelter during an emergency.  W. Va. Code § 15-5-12 (1973) (emphasis added).

[9] Respondents assert that when the Legislature intends to extend immunity to an individual's employer, it says so, and when it chooses not to, it makes deliberate omissions of those entities.  *Compare* W. Va. Code § 55-7-26(a) (2011) (granting immunity to first responders and "his or her supervisor, agency, employer, or supervising entity"); W. Va. Code § 23-2C-21 (2009) (granting immunity to both third-party administrator or private carrier and their employees or agents) *with* W. Va. Code § 23-4-2(d)(2)(A) and (B) (2015) (stripping workers compensation immunity for two categories of deliberate intent, one of which may be had against "employer or person," the second allowing an action only against the "employer").

when a statute is ambiguous may the Court inquire as to a statute's purpose and otherwise employ the canons of statutory construction. Instead, "[w]hen this Court finds the terms of a statute unambiguous, judicial inquiry is complete. In such a case, the statutory language must be regarded as conclusive. Thus, our interpretive task begins by examining the language of the statute." *W. Va. Health Care Cost Review Auth*., 196 W. Va. at 337, 472 S.E.2d at 422.

The language of the statute in this instance is unmistakably clear: the immunity prescribed in West Virginia Code § 15-5-11(a) for "duly qualified emergency services workers" extends only to "employees," *i.e.*, individuals or natural persons performing emergency services. There simply is no language in the statute purporting to make the employee's private employer or corporate entity similarly immune, despite the availability of a defined term within the statutory scheme—"person"—which would have brought corporations or other entities within the scope of the immunity. *Compare Regester v. Cty. of Chester*, 797 A.2d 898, 905 (Pa. 2002) ("[T]he defined term 'providers of emergency medical services,' . . . includes facilities and life support services. . . . The term 'personnel' (as opposed to 'providers') plainly signifies the statute's general applicability to individuals or natural persons."). We must conclude this choice was knowing and evidences the Legislature's intention regarding the reach of the immunity provided. *See State ex rel. Frazier v. Meadows*, 193 W. Va. 20, 24, 454 S.E.2d 65, 69 (1994) ("Courts are not free to read into the language what is not there, but rather should apply the statute as written."); Syl. Pt. 1, *Consumer Advocate Div. v. Pub. Serv. Comm'n*, 182 W. Va. 152,

10

386 S.E.2d 650 (1989) ("A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten.").

We therefore hold that the immunity established for "duly qualified emergency services workers" pursuant to West Virginia Code § 15-5-11(a) applies only to individual employees and does not extend to such employee's private employer or corporate entity. *Accord Regester*, 797 A.2d at 902 (affirming conclusion that statutory emergency services immunity provisions "unambiguously operated in favor of individual actors but not their institutional, organizational, or corporate principals"). This conclusion is further reinforced by our general rules of construction regarding immunity. *See* Syl. Pt. 2, *Marlin v. Bill Rich Const., Inc.*, 198 W. Va. 635, 482 S.E.2d 620 (1996) ("The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail.").[10]

---

[10] Because we conclude that a corporate entity/employer like Mon Power is not entitled to the immunity afforded by West Virginia Code § 15-5-11(a), we need not address the circuit court's alternative conclusion that, even if Mon Power were immune under the statute, respondents alleged "willful misconduct" sufficient to strip it of such immunity.

11

Failing direct application of the statutory immunity provided under West Virginia Code § 15-5-11(a), Mon Power alternatively argues that, as an employer, it derives immunity vicariously through the immunity which its employees enjoy under the statute. Citing a phrase from syllabus point 12 of *Dunn v. Rockwell*, 225 W. Va. 434, 689 S.E.2d 255 (2009), Mon Power argues that since an "employer may only be held liable to the extent that the employee can be held liable," where its employees are immune, it is likewise immune in effect. Mon Power asserts that the Legislature recognized that by providing immunity to the employee, such immunity would necessarily extend to the employer, making specific reference to the employer unnecessary and explaining its absence from the statute.

Respondents counter that West Virginia has long rejected the concept of vicarious immunity in general, but comparable, terms. They contend West Virginia implicitly follows the Restatement view of vicarious immunity which provides: "In an action against a principal based on the conduct of a servant in the course of employment . . . . [t]he principal has no defense because of the fact that . . . the agent had an immunity from civil liability as to the act." Restatement (Second) of Agency § 217 (1958). [11] They argue that this position is consistent with our long-standing principles of joint and several

---

[11] *See also* Restatement, § 217 *supra,* cmt. b ("[W]here the principal directs an agent to act, or the agent acts in the scope of employment, the fact that the agent has an immunity from liability does not bar a civil action against the principal.").

liability as between master and servant which provide that even where an action may not be had against a servant or agent, an injured plaintiff may still proceed against the master or principal. Therefore, Mon Power's employees' immunity from suit notwithstanding, respondents maintain they may pursue their case against Mon Power directly.[12]

The Court long ago established that "[i]n a joint action of tort against master and servant, the plaintiff may dismiss the servant for a reason not going to the merits, without impairing his right to proceed against the master, although the latter is liable only under the doctrine of respondeat superior." Syl. Pt. 1, *O'Dell v. Universal Credit Co.*, 118 W. Va. 678, 191 S.E. 568 (1937); *see also* Syl. Pt. 8, in part, *State ex rel. Bumgarner v. Sims*, 139 W. Va. 92, 79 S.E.2d 277 (1953) ("[T]he relation between the master and servant . . . is joint and several in the sense that both master and servant are liable for injuries caused by the negligent wrongdoing of the servant . . . and liability for such injuries may

---

[12] Respondents reiterate that their complaint states a direct action against Mon Power and does not purport to state Mon Power's liability strictly in terms of *respondeat superior*. To combat this perceived "loophole" to the employee immunity granted under West Virginia Code § 15-5-11(a), Mon Power emphasizes that a corporation acts only through its agents, castigating respondents for their alleged belief "that Mon Power is a corporation incarnate, a living being capable of taking action on its own[.]" Obviously, however, it does not follow that a corporate entity cannot also be liable for independently actionable negligence on an institutional level or for the acts of any number of other employees. *See Harless v. First Nat'l Bank in Fairmont*, 169 W. Va. 673, 684, 289 S.E.2d 692, 699 (1982) "[A]n employer might have liability independent of his employee if such liability arose from *acts of the employer* or another employee[.]" (emphasis added)); Syl. Pt. 4, *Humphrey v. Virginian Ry. Co.*, 132 W. Va. 250, 54 S.E.2d 204 (1948) (recognizing direct action against corporation or entity for "the negligence of another employee, *or that of the employer himself*" (emphasis added)).

13

be asserted in an action at law against the master and servant jointly or against each of them in a separate action at law.").

This concept has remained undisturbed throughout the years. In *Woodrum v. Johnson*, 210 W. Va. 762, 768, 559 S.E.2d 908, 914 (2001), the Court permitted an action to proceed against an employer after the employee was released by the plaintiff. The Court stated that it "has consistently . . . tak[en] the position that a plaintiff is permitted to sue the principal either alone or together with the agent." It further observed that, as a result of that well-understood position, "had they chosen, the plaintiffs could have appropriately brought an action solely against the [employer.]" *Id*. at 769, 559 S.E.2d at 915. Accordingly, allowing the plaintiff to proceed against the employer despite having released the employee was "therefore not materially different from what would result if plaintiffs had chosen to utilize procedures that have long been permitted under West Virginia law." *Id*.[13]

---

[13] The foregoing notwithstanding, Mon Power accuses respondents of conflating the concepts of *respondeat superior* and joint tortfeasors. This same accusation of conflation was attempted in *Woodrum*: "The [employer] . . . emphatically argues that 'the issue before this Court is one of the law of vicarious liability, not of joint tortfeasors[.]'" *Woodrum*, 210 W. Va. at 767, 559 S.E.2d at 913. The *Woodrum* court rejected this distinction as necessitating a different result, stating that while "there is a technical difference between joint tortfeasors and those whose liability is derivative or vicarious . . . we have never used this difference to make a practical distinction between the two in the current context." *Id*. at 768, 559 S.E.2d at 914.

14

Closely approximating the issue presented herein, the Court has also reiterated the independence of an action against a principal when addressing the immunity of his agent. In *Smith v. Smith*, 116 W. Va. 230, 179 S.E. 812 (1935), the Court concluded that while an injured parent could not bring action against his child as driver of a vehicle due to parent-child immunity, the parent could still sustain an action against the child/driver's principal, the owner of the vehicle. The defendant in *Smith* made the same argument Mon Power advances here, claiming that "the owner's liability is dependent upon the agent's susceptibility to an action by the plaintiff. And that, the child not being liable to suit, the principal, under the doctrine of respondeat superior, likewise enjoys immunity." *Id*. at 231, 179 S.E. at 812. The Court rejected that position, concluding that "the right of action against the principal is separate from that of the act of the agent, and if the act was negligent, the principal is liable although the agent may not, under the law, be held accountable." *Id.*

Despite the foregoing, Mon Power relies heavily on a factually similar case from Indiana—*Sharp v. Town of Highland*, 665 N.E.2d 610 (Ind. Ct. App. 1996)—as support for the use of vicarious immunity to extend the reach of the specific emergency services immunity at issue. In *Sharp*, the Indiana Court of Appeals granted immunity to the employer/utility for acts performed by its employee during flood relief efforts. Citing Indiana's nearly-identical emergency services immunity statute—which likewise limits immunity to a "worker"—the court summarily concluded that if the employee was immune, such immunity would extend to his employer. *Id*. at 615. This conclusory

15

determination has been criticized as lacking appropriate analysis or support. *See Garcia v. Estate of Arribas*, 363 F. Supp. 2d 1309, 1320 (D. Kan. 2005) ("[T]he [*Sharp*] court failed to cite a single authority for its proposition, and gave the matter no serious discussion.").

More importantly, however, Indiana has recently distanced itself from the result in *Sharp*, expressly adopting a stance aligned with the Restatement view regarding the delegability of immunities. In *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 255 (Ind. Ct. App. 2013), the Indiana Court of Appeals held that an agent-tortfeasor's death did not defeat an action against his principal. The *Mayer* Court held that non-survivability of the action against the agent was distinguishable from an "exoneration" of the agent or a "merits"-based defense to his liability—both of which inure to the benefit of the vicariously liable principal. *Id*. at 254. Citing section 217 of the Restatement, *supra*, the court found that non-survivability was "instead a form of personal immunity from suit, which is not transferable to others." *Id*.

Mon Power further contends—despite the Court's holding in *Smith*—that the transferability of immunity from employee to employer was implicitly established by this Court in certain language contained in syllabus point 12 of *Dunn*, 225 W. Va. 434, 689 S.E.2d 255. *Dunn* holds that where an employer's liability is vicarious, the applicable statute of limitations is determined by the employee's tortious act.[14] *Id*. In articulating this

---

[14] Syllabus point 12 of *Dunn*, in its entirety, reads:

(continued . . .)

16

holding, the Court stated, in part, "*[b]ecause the employer may only be held liable to the extent that the employee can be held liable* . . . the applicable statute of limitation is determined by the tortious act of the employee." *Id.* (emphasis added). Mon Power insists that this phrasing implicitly recognizes the adoption of vicarious immunity in West Virginia and establishes employer liability which moves in unwavering lockstep with any defenses or immunities of the employee.

The practical effect of the language in *Dunn* was simply to establish that the vicariously liable employer may avail itself of this particular procedural defense—the statute of limitations—applicable to its employee. By no means did *Dunn* or its syllabus point purport to speak to whether an employer benefits from statutory immunity bestowed on its employee. In fact, the Court's discussion of similar issues in the context of *qualified* immunity suggests quite the contrary: "[I]t is clear in our jurisprudence that the immunity of the State and/or its agency is not necessarily circumscribed by the extent of the public official's immunity or lack thereof." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A. B.*, 234 W. Va. 492, 502, 766 S.E.2d 751, 761 (2014). *Accord* W. Va. Code § 29-12A-5(c) (1986)

---

The doctrine of *respondeat superior* imposes liability on an employer for the tortious acts of its employees, not because the employer is at fault, but merely as a matter of public policy. Because the employer may only be held liable to the extent that the employee can be held liable, and only for acts committed by the employee in the course of his or her employment, the applicable statute of limitation is determined by the tortious act of the employee.

17

(stating that statutory immunity of employee of a political subdivision "does not affect or limit any liability of a political subdivision for an act or omission of the employee.").

Moreover, the wording of the "to the extent" language in *Dunn* reflects a critical distinction—its syllabus point is phrased in terms of the employer's *liability*. This Court has previously explained that immunity is conceptually different than a defense to liability: "Qualified immunity is, quite simply, immunity from suit," whereas "[t]he public duty doctrine is a defense to negligence-based *liability*, i.e. an absence of duty." *W. Va. Dept. of Health & Hum. Res. v. Payne*, 231 W. Va. 563, 568 n.10, 746 S.E.2d 554, 559 n.10 (2013) (emphasis added). In that regard, *Dunn*'s "to the extent" phrasing is nothing more than an expression of the equal availability of certain "merits-based" defenses to a vicariously liable employer, as the *Mayer* court discussed, and *Dunn* acknowledges. *See Dunn*, 225 W. Va. at 62, 689 S.E.2d at 274 ("'If an employee is not liable, the employer cannot be liable under the doctrine of respondeat superior. The principal's liability is derived solely from that of its agent.'" (quoting *Kocsis v. Harrison*, 543 N.W.2d 164, 169 (Neb. 1996))).

Stated differently, the fact that an individual or entity is immune does not necessarily connote an absence of otherwise actionable tortious conduct; tortious conduct theoretically may have occurred for which an individual or entity has simply been granted immunity from its effects. *See* W. Va. Code § 29-12A-5(a) and (b) (delineating scenarios where political subdivisions or its employees are "immune from liability"); *Williams v.*

*State of California*, 664 P.2d 137, 139 (Cal. 1983) ("'Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be *liable in the absence of such immunity*.'" (quoting *Davidson v. City of Westminster*, 649 P.2d 894, 896 (Cal. 1982)) (emphasis added)); *Wallace v. Dean*, 3 So.3d 1035, 1045 (Fla. 2009) ("[T]he presence of [] immunity does not render the State's actions nontortious []it simply means that the State has not consented to suit in its courts with regard to certain claims[.]" (emphasis removed)). Accordingly, an agent's immunity from suit negates neither his tortious conduct nor the vicarious liability of his principal which results—it merely renders him personally beyond the reach of the courts to answer for it. *See Davis v. Harrod*, 407 F.2d 1280, 1284 (D.C. Cir. 1969) ("[A]n immunity from liability does not mean that a person did not commit a negligent, harmful act. It only means that for certain policy reasons liability is precluded against that person."). An agent's immunity does not nullify his principal's separate liability for that conduct under *respondeat superior* principles.

We therefore conclude that Mon Power has failed to establish that this Court has endorsed the concept of vicarious immunity such as to permit extension of the immunity afforded its employees under West Virginia Code § 15-5-11(a) to itself. Rather, we find that our historical treatment of joint tortfeasors in the context of *respondeat superior* suggests that West Virginia is in accord with the Restatement view that, unless

19

otherwise provided by law, [15] "[i]mmunities, unlike privileges, are not delegable and are available as a defense only to persons who have them." Restatement, *supra* § 217 cmt. b. We likewise concur with the policy ramifications of this conclusion as stated by the District Court in *Garcia*:

> The court finds this result is consistent with the policies undergirding the doctrine of respondeat superior. If societal goals require the employer to bear the risk that its tortfeasor-employee is judgment proof, then, in the absence of a clear legislative statement to the contrary, the employer should also bear the similar risk that its tortfeasor-employee is immune from suit.

363 F. Supp. 2d at 1321.

## IV. CONCLUSION

For the reasons set forth hereinabove, we affirm the June 28, 2019, order of the Circuit Court of Kanawha County, West Virginia, denying Mon Power's motion to dismiss.

Affirmed.

---

[15] Of course, lockstep immunity between principal and agent may, under certain circumstances, be otherwise provided by the law of this Court or statutory enactment, as noted herein. *See*, *e.g.*, *A. B.*, 234 W. Va. 492, 766 S.E.2d 751 and n.9, *supra*.